JUAN ESTÉVEZ GÓMEZ, Appellant, *v.* REGISTRAR OF PROPERTY OF MAYAGÜEZ, Respondent.

No. 1206. Submitted April 9, 1947.—Decided May 23, 1947.

*José Sabater* for appellant. The registrar appeared by brief.

MR. JUSTICE DE JESÚS delivered the opinion of the Court.

By deed No. 138 of June 14, 1946, executed before Notary José Sabater García, Doroteo Estévez Gimeno, after describing several properties belonging to him, agreed with his son, Juan Estévez Gómez, the other party, to convey to him said property in payment of a debt. Pursuant to this agreement

and under the title "Statement of Debt," he set forth in said deed that since 1926 his son had practically taken charge of the management of his property because of his advanced age and because he was losing his eyesight; that in order to render this service his son almost abandoned his law practice; that he carried on uninterruptedly until 1941 without receiving any compensation whatsoever, *"but now* he has agreed with his son to credit him with an annual compensation of at least $1,000, although his services are worth more and, consequently, he admits owing his son the amount of fifteen thousand dollars ($15,000)." (Italics ours.)

He further stated that during five years his son had managed other property for which reason he believes and agrees that an annual compensation of $400 is fair and admitted owing to him $2,000 in addition to the aforesaid $15,000. Lastly, in order to pay the $17,000 which according to Doroteo Estévez Gimeno he was owing his son, he conveyed to the latter the properties described in the deed.

Upon presenting this deed in the registry of property the registrar refused to record it and entered a cautionary notice on the ground that the so-called "Contract of Giving in Payment" described in the deed is but a remunerative gift in connection with which the payment of the tax levied by Act No. 303 of April 12, 1946 (Laws of 1946, p. 782), has not been proved.

■ It is commonplace that the name does not make the thing. In the deed before us the notary chose to call the transaction "Giving in Payment" (*Dación en Pago*), but it appears from the deed that at the time the son rendered his services no compensation whatsoever had been agreed upon and there was no intention of collecting any. It was at the time of executing the deed that Doroteo Estévez Gimeno for the first time decided to fix a compensation for the services previously rendered. Up to that time the debt was not recoverable and therefore his act of liberality constituted

the remunerative gift defined in § 560 of the Civil Code.[1] Because, as Manresa says, for a gift to exist there must not be a previous obligation, that is, the price of the services sought to be compensated should not be recoverable from the donor prior to the making of the gift. 5 Manresa, *Código Civil*, (3rd. ed. 1910) page 71. Otherwise, one wishing to disguise a gift under the mask of giving in payment, could easily admit the enforceability of an obligation which was not previously recoverable and at the same time give something in payment thereof. This solution would not only violate § 560 of the Civil Code but it would also be in conflict with the clear language of that part of § 1(*a*) of Act No. 303 of 1946, which says: "A gift shall be such both when made directly and indirectly."

In order to illustrate what does not constitute the recoverable debt mentioned in § 619 of the Spanish Civil Code, equivalent to our § 560, Manresa says:

". . . A person gratuitously manages the property of a friend who is ill, or a tutor that of a minor or incapacitated person, sacrificing his life to the care of that property or to the performance of what he believes is his duty. Later he obtains a compensation which is more or less important but well-deserved. Is this compensation a gift? . . . From the donor's viewpoint, according to Troplong, and as in our opinion it is meant in Section 619, it is a gift because the donor cannot legally be compelled to pay for those services." 5 Manresa (3d ed. 1910) p. 71.

■ The power to pass on recordable documents has been conferred exclusively on the registrar.[2] Since it appears

---

[1] Section 560 of the Civil Code reads thus:

"Gifts *inter vivos* may be of three kinds:

"1. * * * * * * *

"2. * * * * * * *

"3. A remunerative gift or one made to a person by reason of his merits or for services rendered to the donor, provided such services do not constitute recoverable debts."

[2] Section 18 of the Mortgage Law:

"Registrars shall, under their responsibility, determine the legality of the instruments under which record is requested, and the capacity of the parties thereto, upon the facts that appear from said instruments themselves."

from the deed that the transaction is a remunerative gift *inter vivos*, the registrar was not bound by the name given to said document by the notary.

 It having been established that the transaction contained in the deed is a remunerative gift *inter vivos*, was the registrar justified in refusing to record it on the ground that the receipt of the tax provided by law was not produced?

From the beginning we have laid emphasis on the fact that the present case deals with a gift *inter vivos*. Our reason for this is simply that, although this gift, made by the donor in life, is subject to the tax fixed by Act No. 303 of 1946, yet, the procedure for its collection is different from that provided by the same Act for the collection of the inheritance tax. The procedure to collect the tax levied on this kind of gifts is governed by §§ 7 and 8 of the Act. In contrast to § 5, which applies to property transferred by inheritance, § 7(*a*) of Act No. 303 imposes on every donor making a gift of more than $1,000—provided the gift be *inter vivos*—[3] the obligation of making a return to the Treasurer within ten days after the date of such gift, stating the net value of the gift, the age of the donor, the name and address of the donee, and such other information as the Treasurer may require. It further provides that any donor who during any calendar year makes gifts of more than $5,000 shall make a return on or before February 1 of the calendar year, setting forth in detail the amount or value of each gift, the date on which made, the name, address and age of the person to whom each gift is made and such other information as the Treasurer may require. And § 7(*b*) imposes on the donee the same obligations of making a similar return on or before February 1 of the following calendar year. Lastly, § 8(*b*) provides that "in the case of gifts *other than gifts to non-residents and gifts effective at death*, the

---

[3] The Section expressly excludes gifts made by wills or other disposition effective at death.

tax shall be due and payable on or before February 1 of the year following the year in which the gift was made . . ." (Italics ours.)

On the other hand, the procedure to collect the inheritance tax including the tax levied on gifts *mortis causa,* which are charged against the inheritance the same as legacies, is governed by § 5 *et seq.* of Act No. 99 of 1925 (Laws of 1925, p. 790), as amended by, and incorporated into, Act No. 303 of 1946.

Section 12 of Act No. 99 of 1925, as amended by Act No. 303 of 1946, which is one of the Sections governing the collection of the inheritance tax proper, contains the provision which the registrar sought to apply, to wit:

"Except in such special cases as are determined in Section 5(*a*) [4] of this Act, no court shall approve the partition or distribution of the estate of any decedent or allow any final settlement of the accounts of any executor, administrator, trustee or person administering any estate, unless the special receipt or receipts as provided in Section 11 of this Act, have been produced and exhibited; . . . and no registrar shall record . . . any instrument . . . in connection with the partition, distribution or delivery of such property, unless such receipt or receipts of the Treasurer are presented; . . ."

A moment's reflection demonstrates that the meaning of the paragraph just quoted, contemplates exclusively the tax levied on property transferred by inheritance and not gifts *inter vivos,* which have their effect during the life of the donor, and since neither this nor any other Act contains any provision requiring, as a prerequisite to the recording of a gift *inter vivos,* that the payment of said tax be proved, the

---

[4] Section 5(*a*):

"Whenever any heir, mandatory, or legatee, has no money in cash wherewith to pay property taxes on inherited properties, or to pay the inheritance tax levied by this Act, the Treasurer of Puerto Rico is hereby authorized to permit the executor, administrator or trustee, through the proper legal procedure, to sell or encumber by mortgage security or otherwise, such portion of the estate as may be absolutely necessary to raise funds sufficient to pay the aforesaid taxes, and in said cases the registrars of property are hereby authorized to record such documents as may be executed for that purpose."

registrar erred in refusing to record the deed under consideration because of a supposed noncompliance with a requirement not provided by law.

· The decision appealed from should be reversed and the record of the instrument ordered free of defects.